In the Matter of HERBERT L. GEORGE, in His Own Behalf and in Behalf of WILLIAM A. KELLY, ERNEST M. HEFFNER, WILLIAM P. EDELMUTH, FRANCIS MARTOCCI, LUKE JOHNSON, JOSEPH W. HUGHES, MARIE A. KOENIG, FRANK T. OULTEN, THOMAS F. COUGHLIN, RALPH DE GRAFF, GEORGE DEMPSEY, RAYMOND A. GARRAGHAN, FRANK McMAHON and All Others Having a Common Interest in the Within Proceeding, Petitioner, against FRED N. VAN KEUREN, as Commissioner of Elections of Ulster County, et al., Respondents.

Supreme Court, Special Term, Ulster County, July 18, 1945.

*Arthur B. Ewig* for petitioner.

*N. Le Van Haver* for respondents.

ELSWORTH, J. This is an application by the petitioner, Herbert L. George, in behalf of himself and the other candidates above named, for an order directing the Board of Elections of Ulster County to accept nine separate petitions designating the said petitioner as the candidate of the American Labor Party for the office of County Clerk of Ulster County, and the other above-named parties as the respective candidates of said American Labor Party for various other public offices of the County of Ulster and City of Kingston, a detailed recital of which offices appears unnecessary for the purposes of the determination to be made herein.

The facts presented are not in dispute. It appears that the aforesaid nine designating petitions were mailed in five different envelopes addressed to the Board of Elections of the County of Ulster, Kingston, New York, on June 26, 1945; that one petition was mailed in the central or main post office of the city of Kingston at 8:05 P.M.; that the remaining eight petitions, contained in four envelopes, were mailed in the post-office box maintained by the United States Government at the central post office of the city of Kingston at about 11:00 P.M.; that the five envelopes, containing the said nine petitions were received in the office of the Board of Elections of Ulster County in the morning of June 27, 1945; that each of the said five envelopes was postmarked 5:30 A.M., June 27th; that mail deposited for mailing in the central post office of the city of Kingston, or in any of the United States post-office boxes maintained within the city of Kingston, after the hour of 8:15 P.M., will not be postmarked until 5:30 A.M. of the following day; that no objection has been raised as to the form of the nine petitions, the manner of execution, nor the sufficiency of the signatures thereof.

The New York State Legislature in its last annual session amended the Election Law by enacting chapter 563 of the Laws of 1945, which became effective April 5, 1945. It provides as follows: " Section 1. Section one hundred forty of chapter five hundred eighty-eight of the laws of nineteen hundred twenty-two, entitled ' An act in relation to the elections, constituting chapter seventeen of the consolidated laws,' as amended, is hereby amended by adding a new subdivision thereto, to be subdivision eleven, to read as follows:

" 11. All papers required to be filed pursuant to the provisions of this chapter shall be filed between the hours of nine a.m. and five p.m. If the last day for filing shall fall on a legal holiday, such papers shall be accepted for filing on the next business day. All papers sent by mail in an envelope postmarked prior to midnight of the last day of filing shall be accepted for filing on the next business day." This statute was passed by the Legislature as the result of the study of a joint legislative committee created in 1944 to revise and recodify the Election Law. Prior to the amendment's enactment, it was the generally accepted rule that primary petitions could be legally filed at any time during the twenty-four hours of the last day fixed for filing. The law itself contained no specific provisions, simply reciting the dates between which filing could take place, or the last day for filing. (Election Law, § 140.) A primary petition deposited in the post office on the last day for filing was required to be accepted, although not received until the following day. (1916 Atty. Gen. 370.) Filing under these rather general rules did lead to confusion and litigation. Some election offices remained open until midnight on the last day for filing, while others closed at the customary business hour of closing. Numerous disputes as to the time of mailing arose. It may well have been that the Legislature had these things in mind in adopting the amendment and sought thereby to correct and improve the same.

The language of the amendment is clear, plain and unambiguous, and no occasion exists for the construction thereof. (*People ex rel. L. & N. Y. R. R. Co.* v. *Sohmer,* 217 N. Y. 443; *Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334.) In *Town of Putnam Valley* v. *Slutzky* (*supra*, p. 343) the Court of Appeals in passing upon the wording of a comparatively new provision of the Town Law said: " We are bound, of course, in interpreting a statute, to construe it * * * in accordance with the sense of its terms and the intention of the framers of the law. However, ' that intention is first to be sought from the

words employed, and if the language is unambiguous, the words plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation ' (*Settle* v. *Van Evrea,* 49 N. Y. 280, 281). We find nothing ambiguous in the wording of section 27, subdivision 2, of the Town Law. Its words and meaning on its face seem clear. The idea of the Legislature is not in doubt and its meaning and effect cannot be extended by conjecture or implication.'' A reading, casual or careful, of the last sentence of subdivision 11, that being the controlling sentence here, reveals no ambiguity of language. It says '' in an envelope postmarked prior to midnight ''. It does not say in an envelope *mailed* prior to midnight. '' Postmark '', the noun, is defined as '' The mark or stamp of a post office on mail-matter handled there,'' and '' postmark '', the verb, '' To put a postmark on, as a letter.'' (Funk & Wagnall's New Standard Dictionary.) An envelope mailed is not an envelope postmarked. The two operations are separate and distinct. In view of the clear, plain wording of the statute, the court feels that under the facts here existing it was the duty of the Board of Elections of Ulster County to reject the designating petitions in question.

This brings us to the question whether the court's power of discretion given under section 330 of the Election Law to '' make such order as justice may require '' should, under the facts here presented, be exercised favorably to the petitioners. The conceded facts hereinbefore set forth show an apparently honest effort on the part of the petitioners to comply with the statute, and granting the relief sought would cause no disruption of the primary machinery or interfere in any way with other requirements of the law. In determining what is the right thing to do in cases of this character, the policy of the courts has been to take a broad, rather than a narrow, view. (*Matter of Lauer* v. *Bd. of Elections,* 262 N. Y. 416; *Matter of Cunningham* v. *McCloskey,* 246 App. Div. 543; *Matter of Parks,* 239 App. Div. 241; *Matter of Norton,* 34 App. Div. 79.) In *Matter of Lauer* v. *Bd. of Elections* (*supra,* pp. 418–419) wherein the discretionary power given by section 330 is discussed, the court said: '' The Election Law, by express provision as well as by judicial interpretation, has not fixed fatal finality to the last day for filing certificates of nominations. There may be slips or errors or mistakes which in all reason and justice should be corrected in order that the election may be fair and the will of all the electors ascertained. The Election Law should not be so interpreted as to defeat the very object of its enactment, which was

to insure fair elections, an equal chance and opportunity for every one to express his choice at the polls. * * * So that no unforeseen occurrence should upset this scheme of the law, section 330 of the Election Law provides that the Supreme Court, or any justice thereof, may determine any question arising in respect to the nomination of any candidate and make such order as justice may require. An accident may happen whereby a nominating certificate could not be filed on or before the last day. To reject such a certificate might make the election one-sided, with no party nomination in opposition. To determine what would be the right thing to do under such circumstances, power must be placed somewhere, and the Legislature has said that the Supreme Court is to determine what justice requires in such a case.''

As a general policy, strict compliance should be exacted where statutes are couched in clear and unmistakable language. However, in certain election matters, including the one presently before the court, the Legislature, in its wisdom, has endowed the court with discretion and directed liberal construction (§ 330). Under a proper application of the discretionary power so vested in the court, the departure of the petitioners here from the wording of the statute does not seem sufficiently great nor flagrant, in view of all the circumstances, to justify denial to them of the relief sought.

Application granted, without costs.